IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WISCONSIN TECH SALES, INC.,

                Plaintiff,

v.                                                   OPINION and ORDER

TECH INCORPORATED, HANCO CORPORATION,         21-cv-505-jdp
and RUBBER INC.,

                Defendants.[1]

---

Plaintiff Wisconsin Tech Sales, Inc. is suing defendants Tech Incorporated, Hanco Corporation, and Rubber Inc. for interfering with a distribution agreement that Wisconsin Tech has with a company called Technical Rubber Company. Specifically, Wisconsin Tech says that it has an exclusive contract with Technical Rubber to distribute its products in Wisconsin and Michigan's upper peninsula and that defendants are distributing Technical Rubber's products in the covered territory. Wisconsin Tech asserts a state-law claim only, but the court has jurisdiction under 28 U.S.C. § 1332 because Wisconsin Tech alleges diversity of citizenship (Wisconsin Tech is a citizen of Wisconsin and defendants are citizens of Kansas, Minnesota, and Illinois), and it is reasonable to infer that more than $75,000 is in controversy.

Each defendant moves to dismiss the amended complaint for failure to state a claim upon which relief may be granted. Dkt. 39; Dkt. 41; Dkt. 43. They contend that Wisconsin Tech hasn't plausibly alleged facts supporting a claim for tortious interference with a contract,

---

[1] Wisconsin Tech referred to Rubber Inc. as "Rubber-Inc." in the complaint and amended complaint. But that defendant says in its briefs that its name doesn't include a hyphen. And Wisconsin Tech refers to the defendant as "Rubber Inc." in its briefs, so the court has amended the caption to reflect the proper name.

which is the legal theory on which the amended complaint rests. The court concludes that Wisconsin Tech hasn't plausibly alleged that any of the defendants interfered with Wisconsin Tech's contractual relationship with Technical Rubber, or, if they did, that Hanco or Rubber, Inc. intended to interfere. The court will grant the motions to dismiss, but Wisconsin Tech may have an opportunity to cure the pleading defects identified in this opinion.

ANALYSIS

**A. Overview of the claim and issues**

Wisconsin Tech's sole claim in the amended complaint is that defendants conspired to tortiously interfere with Wisconsin Tech's distribution agreement with Technical Rubber. It appears that Wisconsin Tech framed the claim as a conspiracy because Wisconsin Tech alleges that only two of three defendants actually interfered with the agreement. Specifically, Wisconsin Tech alleges that Tech Incorporated sold Technical Rubber's products to Hanco and Rubber Inc., which then distributed those products in Wisconsin Tech's territory. Dkt. 34, ¶ 13.

Hanco initially contends that that Wisconsin Tech's conspiracy claim "cannot exist on its own, as a matter of law." Dkt. 42, at 7. It relies on *Crawford v. American Home Mortgage Servicing, Inc.*, which stated that "a claim for civil conspiracy also requires an underlying tort to be actionable." No. 10-cv-198-wmc, 2012 WL 12995303, at *19 (W.D. Wis. Mar. 19, 2012). Hanco construes that statement to mean that a conspiracy must be accompanied by a separate tort claim. But that's incorrect. The point *Crawford* was making was simply that Wisconsin courts don't recognize a claim for a conspiracy in isolation.[2] Rather, the defendants must

---

[2] All parties assume that Wisconsin law applies, so the court has done the same. *See RLI*

conspire to commit an unlawful act, such as a tort. *Onderdonk v. Lamb*, 79 Wis. 2d 241, 246–47, 255 N.W.2d 507, 509–10 (1977); *Segall v. Hurwitz*, 114 Wis. 2d 471, 482, 339 N.W.2d 333, 339 (Ct. App. 1983). In this case, Wisconsin Tech alleges that defendants conspired to tortiously interfere with its distribution agreement, so Wisconsin Tech has satisfied that requirement.

None of the defendants contend in their opening briefs that Wisconsin Tech didn't adequately allege a conspiracy.[3] Rather, they focus on the elements of tortious interference: (1) the plaintiff had a contract or a prospective contractual relationship with a third party; (2) the defendant interfered with that relationship; (3) the interference by the defendant was intentional; (4) there is a causal connection between the interference and damages; and (5) the defendant's interference wasn't justified or privileged. *Manitowoc Co., Inc. v. Lanning*, 2018 WI 6, ¶ 40, 379 Wis. 2d 189, 211, 906 N.W.2d 130, 140. Specifically, all defendants contend that Wisconsin Tech hasn't plausibly alleged interference. Hanco and Rubber Inc. also contend that Wisconsin Tech hasn't plausibly alleged intent. For the reasons explained below, the court agrees with both contentions.

**B. Interference**

Defendants assert two reasons for concluding that Wisconsin Tech hasn't alleged interference. First, Rubber Inc. contends that Wisconsin Tech must prove that defendants

---

*Insurance Company v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008) ("When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits.").

[3] Rubber Inc. challenges the sufficiency of Wisconsin Tech's conspiracy allegations for the first time in its reply brief, but Rubber Inc. forfeited that argument by failing to raise it in the opening brief. *See White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021).

induced Technical Rubber to breach the contract, something that Wisconsin Tech doesn't allege. Rubber Inc. cites *DRM, Inc. v. BLM Land, LLC*, which states that "[t]ortious interference with a contract occurs when someone intentionally and improperly interferes with the performance of a contract between another and a third person by inducing or otherwise causing the third person not to perform the contract." No. 14-cv-754-wmc, 2015 WL 1866144, at *4 (W.D. Wis. Apr. 23, 2015) (internal quotation marks omitted). But *DRM* wasn't purporting to provide an exhaustive description of what qualifies as interference, and the court concludes that a breach of contract by the third party isn't required.

In *Wisconsin Power & Light Co. v. Gerke*, the court held that a plaintiff bringing a tortious interference claim need not prove that the defendant induced the third party to breach the contract. 20 Wis. 2d 181, 187, 121 N.W.2d 912 (1963). Interference also includes making the contract less profitable for the plaintiff or otherwise impairing "the value of a bargain." *Id.* In *Sampson Investments by Sampson v. Jondex Corp.*, the court clarified the scope of *Gerke*, stating that the plaintiff must show that the defendant interfered with "some specific right" belonging to the plaintiff. 176 Wis. 2d 55, 72–73, 499 N.W.2d 177, 184 (1993). In this case, Wisconsin Tech alleges that defendants interfered with its contractual right of exclusivity and that it lost sales to defendants that it otherwise would have made if not for that interference. Dkt. 34, ¶ 56. That type of alleged interference is sufficient to support a tort claim under *Gerke* and *Sampson*.

Second, all defendants contend that there was no interference because Wisconsin Tech hasn't plausibly alleged that it had an exclusive distribution agreement with Technical Rubber. Wisconsin Tech doesn't dispute that the existence of exclusive distribution agreement is critical to its claim. Without such an agreement, sales lost to defendants would be the result of

legitimate competition, which doesn't qualify as interference. *See Pure Milk Prod. Co-op. v. Nat'l Farmers Org.*, 64 Wis. 2d 241, 258, 219 N.W.2d 564, 573 (1974).

In its original complaint, Wisconsin Tech alleged that Technical Rubber granted Wisconsin Tech's owner an exclusive distributorship in March 1987 in some Wisconsin counties and later expanded the agreement to include all of Wisconsin and Michigan's upper peninsula. Dkt. 1, ¶ 9. Wisconsin Tech attached two documents that it said "delineat[ed] the area of responsibility" of the distribution agreement. *Id.* & Exhs. A and B. Defendants moved to dismiss the original complaint, contending that the attached documents didn't give Wisconsin Tech exclusive rights for multiple reasons: (1) the documents didn't include any references to Wisconsin Tech; and (2) the documents didn't include any references to exclusivity.

Rather than respond to defendants' arguments, Wisconsin Tech filed an amended complaint, which omitted any reference to the documents attached to the original complaint. In place of those documents, Wisconsin Tech simply alleged that it "holds an exclusive contract to distribute products manufactured by Interested Party, [Technical Rubber], in the State of Wisconsin and all counties of the Upper Peninsula of Michigan." Dkt. 34, ¶ 9. Wisconsin Tech provided no details about the nature of the agreement or its terms.

In their renewed motions to dismiss, defendants contend that the court should still consider the documents attached to the original complaint. Tech Incorporated cites *Tierney v. Vahle*, which states that a plaintiff should not be able to "evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proved that his claim had no merit." 304 F.3d 734, 738 (7th Cir. 2002). And defendants repeat their arguments from their

original motions about why the documents show that Wisconsin Tech doesn't have an exclusive distribution agreement with Technical Rubber.

In its opposition brief, Wisconsin Tech doesn't respond to any of defendants' arguments about why the attached documents didn't give Wisconsin Tech any exclusivity rights. Instead, Wisconsin Tech says that it "did not allege, nor does it concede, that the 1987 letter correspondence from [Technical Rubber] representative Mike Derenburger is the sole document evidencing the Wisconsin Tech's exclusive distributorship of [Technical Rubber] products." Dkt. 54, at 6. It asks the court to look solely at the allegations of the amended complaint to determine whether Wisconsin Tech has stated claim. Alternatively, it points to a *different* document dated May 2000 as "evidence[e]" of its "exclusive distributorship rights." *Id.* at 7.

Wisconsin Tech is correct that it didn't expressly allege that the documents attached to the complaint were themselves the exclusive distribution agreement. That distinguishes this case from *Tierney*. And the general rule in this circuit is that the court should disregard the original complaint when considering the sufficiency of an amended complaint, even when the amended complaint omits allegations that undermine the claim. *See EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 778–79, 780–81 (7th Cir. 2007). But even if the court disregards the original attachments, it doesn't help Wisconsin Tech because neither the allegations of the amended complaint nor the May 2000 document cited by Wisconsin Tech provide adequate support for the claim.

As for the allegations in the amended complaint, they are simply too vague and conclusory to satisfy federal pleading standards. A plaintiff must do more than simply list the elements of a claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] a formulaic

recitation of the elements of a cause of action will not do."). Rather, the plaintiff must allege enough facts to plausibly suggest that it is entitled to relief. *Id.* at 557. When the claim at issue requires proof of an agreement, this means that the plaintiff must do more than provide a conclusory allegation that an agreement exists. *Id.* Among other things, the plaintiff must identify the promises made in the agreement and how those promises were communicated. *See Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 603–04 (7th Cir. 2009). Wisconsin Tech hasn't done that, so the claim isn't plausible.

As for the new document that Wisconsin Tech cites, defendants object to it, contending that Wisconsin Tech isn't entitled to supplement her amended complaint in her brief. The law on this issue is inconsistent. *Compare id.* at 603 ("[A] complaint may not be amended by briefs in opposition to a motion to dismiss.") (citing *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1103 (7th Cir. 1984)), *with Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) ("[F]acts alleged by a plaintiff in a brief in opposition to a motion to dismiss may be considered when evaluating the sufficiency of a complaint so long as they are consistent of the allegations in the complaint.") (internal quotation marks omitted). *See also Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 341 n.2 (7th Cir. 2022) (acknowledging the conflict in circuit law on this issue but declining to resolve it). But even if the court considers the May 2000 document, it doesn't provide a plausible basis for Wisconsin Tech's claim. Wisconsin Tech says that the document addresses the deficiencies of the attachments because it "specifically names Wisconsin Tech as the entity to which [Technical Rubber] granted the distribution territory" and it "specifies that the distribution territory granted to Wisconsin Tech is exclusive." Dkt. 54, at 8. But Wisconsin Tech cites no language in the document that gives Wisconsin Tech an exclusive right to distribute in Wisconsin or Michigan.

The May 2000 document is a settlement agreement between Wisconsin Tech, Technical Rubber, and Tech Incorporated. Dkt. 55-1. The agreement requires Tech Incorporated and Technical Rubber to pay Wisconsin Tech a percentage of their sales of Technical Rubber's products to a company called Grey Products, Inc. if those products are delivered to a facility within 100 miles of Wisconsin. *Id.*, ¶¶ 1–2. The agreement includes exceptions for several Wisconsin counties, *id.*, ¶ 7, and it allows Tech Incorporated to continue selling Technical Rubber's products in Wisconsin without payment to Wisconsin Tech if those sales are made to "Twinco/Romax and/or Hanco," *id.*, ¶ 8.

The agreement doesn't include a provision giving Wisconsin Tech exclusive distribution rights in Wisconsin and Michigan's upper peninsula. In fact, the agreement gives Tech Incorporated and Hanco license to continue distributing Technical Rubber products in Wisconsin. And even if the 2000 agreement did grant Wisconsin Tech exclusive distribution rights, that wouldn't help Wisconsin Tech in this case because the agreement expired in 2005. *Id.*, ¶ 5.

The 2000 agreement does include a "whereas" clause, which states that "Wisconsin Tech and Tech [Incorporated] have each had assigned to them by [Technical Rubber] exclusive territories for the distribution of products for [Technical Rubber] including the Proprietary Products." *Id.* at 1. But a recital doesn't create rights; it is simply an interpretive tool for determining the intent of the parties. *Levy v. Levy*, 130 Wis. 2d 523, 534, 388 N.W.2d 170, 175 (1986) ("The recital or whereas clause of a contract may be examined to determine the intention of the parties."); *Trafton v. Rocketplane Kistler, Inc.*, No. 08-C-99, 2010 WL 771511, at *4 (E.D. Wis. Mar. 3, 2010) ("It is well-established, moreover, that 'whereas' clauses exist merely to provide context and are not themselves part of the agreement.").

The 2000 agreement does suggest that Wisconsin Tech, Technical Rubber, and Tech Incorporated may have *believed* in 2000 that Wisconsin Tech had exclusive distribution rights for the area within 100 miles of Wisconsin, with the exception of several counties. But Wisconsin Tech hasn't identified an agreement that actually gave Wisconsin Tech those rights or that was in effect during the time relevant to the allegations of the amended complaint.

Under some circumstances, an implied contract may arise from the parties' course of conduct, even without an express agreement. *Dickman v. Vollmer*, 2007 WI App 141, ¶ 19, 303 Wis. 2d 241, 253, 736 N.W.2d 202, 208. But Wisconsin Tech doesn't allege that it had an implied contract with Technical Rubber, and it provides no factual basis for reaching that conclusion.[4] Further, Wisconsin Tech simply ignores the qualifying language in the 2000 agreement that expressly allows Hanco to sell Technical Rubber products in Wisconsin. Although the 2000 agreement is expired, Wisconsin Tech identifies no basis for inferring that Hanco is prohibited from distributing Technical Rubber products in Wisconsin or that any implied contract it had with Technical Rubber remains in force and would bar the sales alleged in the amended complaint. For these reasons, the court concludes that Wisconsin Tech hasn't plausibly alleged that defendants interfered with Wisconsin Tech's contractual relationship with Technical Rubber.

---

[4] In their reply briefs, Tech Incorporated and Hanco contend that an unwritten distribution agreement would be barred by the statute of frauds. But the statute of frauds is an affirmative defense, which means that it should be raised in a motion for judgment on the pleadings or motion for summary judgment rather than a motion to dismiss. *See Yassan v. J.P. Morgan Chase and Co.*, 708 F.3d 963, 975–76 (7th Cir. 2013). And there are exceptions to the statute of frauds, which defendants don't address. So the court declines to consider that issue.

**C. Intent**

A party bringing a tortious interference claim must prove that the defendant "knew or should have known" that its conduct "was substantially certain" to cause interference with the plaintiff's contract. *Briesemeister v. Lehner*, 2006 WI App 140, ¶ 49, 295 Wis. 2d 429, 453, 720 N.W.2d 531, 543 (quoting Wis JI—Civil 2780). Defendants Rubber Inc. and Hanco contend that Wisconsin Tech hasn't plausibly alleged this element, and the court agrees.

Defendants could not have known that Wisconsin sales would interfere with Wisconsin Tech's contractual relationship with Technical Rubber if they had no reason to know that Technical Rubber had granted exclusive distribution rights to Wisconsin Tech. Wisconsin Tech accepts that premise, but it contends that it adequately alleged knowledge, pointing to paragraph 10 of the amended complaint: "Upon information and belief, the Defendants, Tech Incorporated, Hanco Corporation, and Rubber-Inc., are aware of the exclusive distributorship granted by [Technical Rubber] to the Plaintiff." Dkt. 34, ¶ 10. But that's just a conclusion. Although Federal Rule of Civil Procedure 9(b) allows intent and knowledge to be pleaded "generally," that doesn't mean a conclusory allegation will suffice. *See Ashcroft v. Iqbal*, 556 U.S. 662, 686–87 (2009) ("generally" in Rule 9(b) doesn't mean conclusory).

Wisconsin Tech doesn't provide a plausible basis for inferring that Hanco or Rubber Inc. knew or should have known about any exclusivity agreement between Wisconsin Tech and Technical Rubber. Particularly because Wisconsin Tech hasn't identified a contract that gave it exclusive distribution rights, it isn't reasonable to infer that either Hanco or Rubber Inc. knew or should have known about any exclusive rights. Even if the court assumes that the 2000 agreement would provide notice, neither Hanco nor Rubber Inc. were a party to that agreement, and Wisconsin Tech identifies no reason why either of them would know about it.

**D. Leave to amend**

The court concludes that Wisconsin Tech hasn't plausibly alleged that it had an exclusive contract with Technical Rubber or that Hanco or Rubber Inc. knew or should have known about any exclusive contract that may have existed. The remaining question is whether to give Wisconsin Tech leave to amend the complaint. The general rule is that the court should give the plaintiff at least one chance to cure pleading deficiencies. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). Although Wisconsin Tech has already amended its complaint once, that was not in response to any guidance provided by the court. So the court will give Wisconsin Tech an opportunity to address the deficiencies identified in this opinion.

ORDER

IT IS ORDERED that:

1. Defendants' motions to dismiss, Dkt. 39, Dkt. 41, Dkt. 43, are GRANTED, and the amended complaint is DISMISSED.

2. Plaintiff Wisconsin Tech Sales, Inc. may have until May 27, 2022, to file an amended complaint that cures the pleading defects identified in this order. If Wisconsin Tech fails to respond by then, the court will dismiss the complaint with prejudice and enter judgment for defendants.

Entered May 18, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge